UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Crim. No. 3:15-cr-00055 (AWT) |
| | : |
| BRIAN PAGE | : |

**INDICATIVE RULING PURSUANT TO RULE 37(a)(3)**

The defendant, Brian Page, has filed a motion for compassionate release (ECF No. 148) pursuant to 18 U.S.C. § 3182(c)(1)(A)(i). He requests that the court reduce his sentence to time served and allow him to begin his four-year term of supervised release with home confinement as a condition of supervised release.

On October 17, 2017 the defendant was sentenced in this case, i.e. 3:15cr55(AWT) (the "2015 Case") to a term of imprisonment of 97 months to be followed by a four-year term of supervised release. The defendant refused to surrender to serve his sentence in the 2015 Case, and on August 14, 2019, the defendant was sentenced in case no. 17cr279(AWT), (the "2017 Case") to a three-month term of imprisonment to be served consecutive to the sentence in the 2015 Case, and a concurrent two-year term of supervised release with the first six months of supervised release being spent on home detention with location

monitoring. An appeal in the 2015 Case is currently pending, see United States of America v. Page, 19-4075 (2d Cir.), so the court does not technically have jurisdiction over the defendant's motion. However, the court has reviewed the defendant's motion and would grant the motion, for the reasons set forth below, if the court of appeals remanded for that purpose, as contemplated by Fed. R. Crim. P. 37(a)(3).

Section 3582(c)(1)(A) requires that

> the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C. § 3582(c)(1)(A). Assuming a defendant has exhausted administrative remedies, a court may reduce a term of imprisonment under Section 3582(c)(1)(A)(i) if, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission". 18 U.S.C. § 3582(c)(1)(A)(i).

It is undisputed that the defendant has exhausted his administrative remedies. In addition, the defendant has shown that, after considering the applicable factors set forth in 18

2

U.S.C. § 3553(a), there are extraordinary and compelling reasons warranting a sentence reduction.

The defendant has a combination of medical conditions that increases his risk of severe illness from the virus that causes COVID-19 should he contract that virus. His documented medical conditions include being diagnosed with an aortic aneurysm; needing to use proton-pump inhibitors to treat gastroesophageal reflux disease; sleep apnea (which can lead to the development of cardiac arrhythmia, heart attack and stroke); and being overweight. It appears that the most serious of these conditions are the aortic aneurysm and the need to use a proton-pump inhibitor.

The Centers for Disease Control and Prevention guidelines provide that certain heart conditions such as heart failure, coronary artery disease and cardio myopathies increase the risk of severe illness from the virus if an individual contracts COVID-19. Although an aortic aneurysm is not one of the listed heart conditions, it can lead to a heart attack or other complications. The defendant had not been diagnosed with this condition at the time he was sentenced in the 2015 Case in 2017, but it is reflected in the Presentence Report for the 2017 Case.

The defendant's medical records and the Presentence Reports for both offenses show that he was diagnosed with gastroesophageal reflux disease ("GERD") in 2003. For example,

3

his Bureau of Prison medical records state in a clinical encounter administrative note: "EGD in 2003 showed erosion since then has been on PPI".  Motion, Ex. A (ECF No. 148-2) at 32 of 53.  The defendant's medical records reflect that he is receiving a proton-pump inhibitor, Omeprazole, by mouth each day.  The defendant's memorandum directs the court's attention to an article published in the American Journal of Gastroenterology reporting the results of a study which concluded that "individuals using PPIs up to once daily . . . or twice daily . . . had significantly increased odds for reporting a positive COVID-19 test when compared with those not taking PPIs."  Christopher V. Almario, et al., Increased Risk of COVID-19 Among Users of Proton Pump Inhibitors, AM. J. OF GASTROENTEROLOGY (Aug. 25, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7473791/.

   The applicable Section 3553(a) factors support a reduction of the defendant's sentence.  At sentencing in the 2015 Case, the court stated that the purposes of sentencing the court should be most aware of were the need to provide just punishment, the need to protect the public from further crimes committed by the defendant, and the need to deter the defendant from committing further offenses.  At sentencing in the 2017 Case, the court concluded that the purposes of sentencing the court should be most aware of were the need to provide just

4

punishment and the need for the sentence imposed to serve the goal of rehabilitation, i.e. by considering whether there is a need to provide the defendant with educational or vocational training, medical care or other correctional treatment in the most effective manner; the court's specific focus was the need to provide the defendant with medical care.  This was because at that point the defendant had been diagnosed with the aortic aneurysm.  In imposing sentence, the court departed, to give effect to the parties' intention in the plea agreement, to Criminal History Category III and Offense Level 9, where the advisory range under the Sentencing Guidelines is eight to fourteen months of imprisonment but the range is in Zone B.  The court then imposed a sentence of three months of imprisonment but with the first six months of supervised release to be served on home detention.  The court chose this sentence, as opposed to a straight term of imprisonment, because the defendant had been diagnosed with an aortic aneurysm.  The court believes that, had the defendant been diagnosed with an aortic aneurysm at the time of the sentencing in the 2015 Case, it would have departed or made a variance downward based on that fact.

Factoring in good time credit it appears the defendant will receive, he has served approximately 43% of his sentence, i.e. he had served approximately 38 months and has approximately 47 months remaining.  While the court cannot say that it would have

5

reduced his sentence by more than half because of the defendant's aortic aneurysm had that diagnosis been received at the time of the sentencing in the 2015 Case, the court may well have reduced it by half and, by the time the defendant is processed out of the Bureau of Prisons, the time he has served will be consistent with such a departure.

With respect to the defendant's history and characteristics, at sentencing in the 2015 Case the court was quite concerned about the defendant's criminal record.  The court stated

> Sometimes we have a defendant who's basically someone who commits crimes like theft and fraud because of their drug habit. And sometimes we have a defendant who's a person who commits crimes like theft and fraud and they also have a drug habit. Unfortunately, I have concluded that you are in the second category.

Tr. (ECF No. 115) at 46 ll. 1-6.  Thus the court concluded that there was a need to protect the public from further crimes committed by the defendant and a need to deter the defendant from committing further criminal offenses.  However, that concern has been ameliorated to a significant degree by (1) the defendant's efforts in terms of introspection and his desire to address his addiction and the multiple consequences of it, as was evident at sentencing in the 2017 Case; and (2) the defendant's conduct while he has been incarcerated.  He has been in prison since December 2017, and this is the longest period of

6

time in prison he has ever served.  He does not have any disciplinary record, and he has been employed and completed educational programs while in prison.  Moreover, the Bureau of Prison's records reflect that "Page has been helping tutor and organize ACE classes in the housing units during the COVID Pandemic.  He has done this on a volunteer basis".  Motion at 51 of 53.  Finally, the Bureau of Prison's scoring system places the defendant in the low risk of recidivism category.

Given the defendant's personal growth and change of outlook since he committed the offense conduct in the 2017 Case and his combination of medical conditions, the court believes that a sentence of time served would be appropriate after considering the applicable factors set forth in 18 U.S.C. § 3553(a).

It is so ordered.

Signed this 10th day of December 2020 at Hartford, Connecticut.

                                      /s/AWT
                              Alvin W. Thompson
                     United States District Judge